PLYLER v. ELLIOTT.

1. A sealed note was altered by the payee after its execution by adding thereto the words, "bearing interest at 15 per cent.," but the additional words were erased by him before action brought. *Held,* that he could not recover on the note, which was rendered void by this material alteration.

2. Nor could the payee disregard the note so avoided and recover on the indebtedness for which the note was given.

3. But a contemporaneous mortgage having been executed by the principal debtor to the payee of the note, and the debt sufficiently appearing from the terms of the mortgage alone, which was not altered, the creditor is entitled to a judgment of foreclosure. *Gillett* v. *Powell, Spears Eq.* 143, recognized and followed. MR. JUSTICE McIVER *dissenting.*

---

Before PRESSLEY, J., Lancaster, September, 1881.

The opinion states the case.

*Mr. R. E. Allison,* for appellant, cited 2 *Jones Mort.,* §§ 889, 924, 1203–7; *Spears Eq.* 143; 1 *Hilliard Mort.* 476, § 3; 2 *Pars. Cont.* 716, 722; 12 *Allen* 92; 2 *Washb. Real Prop.* 173; 1 *Greenl. Evid.* 565; 35 *N. J.* 227; 3 *C. E. Gr.* 461.; 2 *Pars. Bills & N.* 571; 63 *Pa. St.* 187; 112 *Mass.* 271; *Am. L. Rev.* (*Jan.* 1876), *p.* 372; 4 *Allen* 440; 4 *Pick.* 352; 6 *Allen* 139; 19 *Pick.* 535; 2 *Cox* 123; 11 *Mass.* 378; 13 *Iowa* 322; 38 *Id.* 181; 43 *Id.* 373; 51 *Miss.* 371.

R

*Mr. Ernest Moore*, contra, cited 12 *S. C.* 612 ; 5 *S. C.* 67 ; 4 *T. R.* 320 ; 2 *Bailey* 359 ; 18 *Cal.* 482 ; 63 *N. Y.* 613 ; *Jones Mort.*, § 741 ; 34 *Ill.* 106 ; 4 *Allen* 562 ; 2 *Washb. Real Prop.* 174, 606 ; 1 *McCord Ch.* 397 ; 2 *Id.* 11 ; 4 *McCord* 336 ; 10 *Rich. Eq.* 487, 582 ; 6 *S. C.* 209.

April 20th, 1883. The opinion of the court was delivered by MR. JUSTICE McGOWAN. This was an action for the double purpose of recovering the balance due upon a note of both the defendants and to foreclose a mortgage upon a tract of land, executed by R. Elliott, the principal in the note, to secure the same debt. The note was in the following terms :

" $703.80.—Twelve months after date we or either of us promise to pay P. M. Plyler, or bearer, Seven Hundred and Three Dollars and eighty cents, for value received of him. Witness our hands and seals, this December 23d, 1874.

*Bearing interest at 15 per cent.*\*

R. ELLIOTT, [L. s.]
C. A. PLYLER, [L. s.] "

The mortgage was executed by Elliott at the same time. Two hundred dollars had been paid on the note January 24th, 1878, and $30 on January 25th, 1879, leaving due the balance of $583.41, for which the plaintiff prayed judgment and foreclosure of the mortgage. The defendants answered, alleging that after the making and issue of said note, upon which said mortgage as security is based, and before this action, the said note was materially altered by the said plaintiff without the consent of the defendants, by adding the words, " bearing interest at 15 per cent.," wherefore they demand judgment. On June 16th, 1881, Judge Aldrich ordered an issue upon the following points :

1. " Were the words, ' bearing interest at 15 per cent.,' added to the note described in the complaint, by the plaintiff, or with his knowledge and consent, as alleged in the answer ?

---

\* These words, " Bearing interest at 15 per cent.," were added by the payee after the execution of the note, and when the note was produced at the trial had been erased. The erasure was made, the plaintiff testified, " with a knife a short time before the suit was commenced."—REPORTER.

2. " If yea, was the same done with a view to alter the terms of the note and with intent to defraud the defendants ?

3. " Have the defendants, or either of them, made any payments on the said note after notice of such alleged change? and have they, or either of them, ratified such change by word or deed ?

4. " What rate of interest was agreed to be paid on the money secured by the note, at the time the note was given ? and what interest, if any, have the defendants at any time agreed to pay ? "

At the October Term of the court for 1881, Judge Pressley made an order, giving the plaintiff leave to amend his complaint by adding the common counts for money loaned, &c., and mortgage given, which was done. On October 5th, 1881, the defendants answered the amended complaint, alleging that any indebtedness which may have existed on the day the note was given "was extinguished by the acceptance of the sealed note, which, since its execution, had been materially altered without the consent of the defendants, by inserting therein and adding thereto the words, 'bearing interest at 15 per cent.,'" &c. To this answer the plaintiff demurred upon the grounds: 1. That it did not state that the alleged alteration was made with fraudulent intent or added to the liability of the defendants. 2. That it did not state that the alleged alteration was made by the plaintiff, or with his knowledge and consent, &c. 3. That it did not charge that the alleged alteration rendered the sealed note void. The judge overruled the demurrer upon the ground that all supposed defects in the answer were cured by the order directing the issues aforesaid, which had been heard and decided before the demurrer was filed.

The jury found against the plaintiff on all the issues, and Judge Pressley decided as follows : " The question of the alleged alteration of the note by adding thereto, after its execution, the words, 'bearing interest at 15 per cent.,' was referred to a jury by Judge Aldrich, and on trial before me the verdict was that said note had been so changed. On subsequent hearing before me I sustain the verdict and adjudge that the said alteration materially changed the said note, with intent to make defendants liable for more interest than was borne by the original note. That addition was

erased by plaintiff before the commencement of this suit, and he claimed herein only the balance of principal and interest, which would have been his right if the note had never been changed. My decision is, that the change of said note was such as entirely to destroy its validity, which could not be restored by the subsequent erasure.

" I also regard it as settled that the taking of a sealed note, with or without security, for a debt due only on account or simple contract, merges the debt into the note; and if that be rendered invalid by act of the holder, he cannot maintain suit on the previous debt or consideration of the note.

" The difficult question is, whether the mortgage executed on the same day with the note can be so separated from it as to stand valid of itself and prevent the merger of the original consideration into the note. In *Gillett* v. *Powell, Spears Eq.* 142, a mortgage and bond were executed for the same debt, but did not refer to each other as forming together one security. The bond was rendered invalid by alteration by the holder, and it was decided that the mortgage was a separate security for the debt, and would keep it alive as a valid claim, though the bond was made invalid by alteration. The difference in this case is, that the mortgage in its condition expressly refers to the note; also, the consideration stated in the mortgage is the exact amount of the note, and is not the amount of the debt as it stood before the note was made. That was only $612, which was increased to $703.80 by adding the interest for twelve months at 15 per cent. But, under the law then existing, that rate of interest could only be maintained by contract in writing, and in this case the note was the only such contract. It is, therefore, plain that the sum of $703.80, stated as the consideration in the mortgage, had reference to that amount provided for by the note. It is, therefore, adjudged that the plaintiff cannot maintain his action, either upon the said note or mortgage, and his complaint is dismissed with costs."

The plaintiff appealed, both from the order overruling the demurrer (but the exceptions on this subject need not be set out), and from the decree, on the following grounds:

1. " That the Circuit judge erred in holding that the writing

at the bottom of the note, these words, viz.: 'Bearing interest at 15 per cent.,' was a material alteration of the note.

2. "That he erred in not finding, as a matter of fact, from the position of these words, their beginning with a capital letter, the absence of any specific amount and of any point of time from which to run, from all the testimony in the case, and, especially, from the explanation of plaintiff himself, that the plaintiff had simply added these words to remind him at what rate of interest he had loaned his money, and what rate of interest the interest-bearing demand in the note was bearing the first year.

3. "That he erred in finding that plaintiff, by adding the said words at the bottom of the note, intended to make defendants liable for more interest than the note originally bore, when there was no evidence to show such intention, and the added words themselves do not bear such interpretation.

4. "That he erred after the issues of fact had been referred to a jury, in charging the jury on the facts of the case, and suggesting further, that there was fraud in the transaction because the words were written below on a crease of the paper where it was difficult to write.

5. "That he erred in failing to find that the defendants, after the words were so added, had promised to pay the debt, thus ratifying the same and waiving the supposed irregularity.

6. "That he erred therein in assuming that the sealed note, referred to in the answer as being altered, was the debt itself; whereas, the same was only one evidence of the debt, and the mortgage might, in the light of equity and good conscience, be considered another distinct evidence of the same debt as well as a lien for the payment of the same.

7. "That he erred therein in concluding that the mortgage could not be so separated from the said sealed note, as signed by both defendants, as to stand valid of itself and to prevent the merger of the original consideration into the said note.

8. "In that he therein failed to recognize that the said sealed note was one security for the payment of the debt, or original consideration, and that the mortgage was another security for the same purpose, and, being of a higher grade, might stand without said sealed note.

9. " That he erred in concluding that the consideration of the debt had merged into that particular sealed note, and that the alleged alteration in said note had entirely destroyed the mortgage as well as the said note.

10. " That he erred in failing to recognize the fact that the said sealed note was a separate contract between the plaintiff and both the defendants, whilst the mortgage was another separate and distinct contract entered into between the plaintiff and the defendant Elliott, alone, and not affecting the defendant Plyler.

11. " That he erred in overlooking the fact that the mortgage does not refer to any note at all for its consideration ; and that it refers in its condition clause to Elliott's promissory note of same date, and not to the sealed note in question at all.

12. " Because the money due by Elliott to plaintiff on account, for loaned money, to wit : Six hundred and twelve dollars, before sealed note was given, was a sufficient consideration for the mortgage.

13. " Because the promissory note of defendant Elliott, referred to in the condition clause of the mortgage, was a sufficient consideration without the sealed note of both defendants for the ·mortgage ; no objection being made to the proof of the mortgage without the production of the promissory note therein referred to on the trial, and the judge erred in not enforcing the lien of the mortgage."

There is no doubt that in the beginning the debt to the plaintiff was upon a valuable consideration, money due before and then borrowed, with interest for a year included, making the amount of $703.80 ; and both the note and mortgage, with seals and of equal dignity, were legal and binding and remained so for two or three years—certainly down to the time when the alteration was made in the note. Although the note when sued had been restored to its original form and no actual injury had resulted to the defendants by the alleged alteration, we must consider it as established by the verdict of the jury, and the approval of the Circuit judge, that at one time before action brought there was an addition to or memorandum on the note of the words about interest, which were afterwards erased. Assuming the correctness of this finding, we agree with the Circuit

judge, that it is well settled that "any material alteration of a written security in a material part renders it void." *Vaughan* v. *Fowler*, 14 *S. C.* 356. In the language of Mr. Greenleaf, (volume I., section 565,) "written instruments which are altered, in the legal sense of that term, are thereby made void."

The note and the mortgage—both securities under seal—one or both—absorbed the simple obligation for the money due, and thereby destroyed the right to sue upon an *indebitatus assumpsit*. The plaintiff is not at liberty to say, "I have made two contracts, and if one of them is made void for fraud, I will set up the other." *Mills* v. *Starr*, 2 *Bail.* 360; *McCorkle* v. *Doby*, 1 *Strobh.* 399. So that the judge was right in dismissing the complaint as to C. A. Plyler, who seems not to have received any of the consideration or to have had any connection with the transaction, except as a surety for Elliott, the principal debtor on the note.

But considering the note as not recoverable either against the principal debtor or his surety on it, the more difficult question still remains, whether the plaintiff can enforce the mortgage, which was not altered, against the principal debtor for the balance of his debt as a separate security unaffected by the alleged alteration of the note. This court has recently held in the case of *Nichols* v. *Briggs*, 18 *S. C.* 484, that when a note and mortgage are both given to secure the same debt, the mortgage may be enforced although the note was barred by the statute of limitations. That case went on the ground that the debt itself is something different from either the note or mortgage, which are both mere securities for and evidences of the debt, and as a consequence the loss of the right to enforce one does not necessarily take away the right to enforce the other. The courts say: "It must be kept in mind that there is a difference between the debt itself and the securities for it. The debt is one, but there may be a number of securities of different kinds, personal, real, pledge, mortgage, &c. The note given is only evidence of the debt and one of the means of collecting it, and if there is a mortgage, that is only another security for the same debt. * * * The bond undoubtedly is the most common assurance, and for this reason possibly it may be regarded as the primary security and a mortgage as cumulative,

but in no proper sense can the mortgage be regarded as a security merely for the bond, which, being only the evidence of the debt, may be displaced by substitutes or lost or destroyed, leaving the mortgage as a subsisting security for the debt in a new form. *Gibbes* v. *R. R. Company,* 13 *S. C.* 253, and authorities. 'A mortgage being given as a security for a debt, the general rule is that no mere change in the mode or time of payment, nothing short of an actual payment of the debt or an express release, will operate as a discharge of the mortgage. The lien lasts as long as the debt.' 1 *Hill. Mort.,* § 3."

This decision and the principle announced must dispose of this case, unless, in respect to its effect upon the debt itself, there is an essential difference between the case of a note barred by the statute and that of one made void by alteration. In the case of the statutory bar we know that only the remedy is taken away. The inquiry then is, what is the effect of avoiding, by the act of the plaintiff himself, a note given as one of the securities for a debt to him? Does it simply take from him all remedy upon that security, or does it in its effects reach further and touch and taint the debt itself? If the latter, then all the securities of course fall with the debt, as it is well established that payment or anything else that reaches to the debt itself and discharges it, *ipso facto* discharges all the securities of every kind. We have not been able to find any case upon the precise point except that of *Gillett* v. *Powell, Spears Eq.* 144, cited and commented on in the Circuit decree. That case is referred to by Mr. Herman in his work on Mortgages (section 293) in the following words: "A mortgage being a mere security, is an evidence of debt, being an instrument the purpose of which is to secure a debt. No other written evidence of the debt than that furnished by the instrument itself is necessary to sustain a mortgage. Thus where a bond secured by mortgage containing no allusion to the bond, was fraudulently altered and rendered void, the mortgage was held valid, and that it was evidence of the debt. *Gillett* v. *Powell, Spears Eq.* 142."

We are unable to discover any principle upon which we can distinguish this case from that of *Gillett* v. *Powell.* In that case, one James Higginbottom purchased property at an admin-

istrator's sale to the amount of $2,337.75, and gave his bond for the same, and on the same day executed a mortgage of the property purchased to the same person to whom he gave the bond, and for identically the same amount. The mortgage made no reference in express terms to the bond, but there cannot possibly be a doubt that it was given to secure the same debt for which the bond was given. When the bond was produced in court it was discovered that it had been altered. The court held that, although the alteration in the bond rendered it void, yet that did not affect the mortgage, which must be taken to be the evidence of the debt, and recoverable. In delivering the judgment of the court, Chancellor Harper said : " But I am of opinion that the alteration of the bond does not affect the mortgage, and that it must be taken as the evidence of the debt. If the mortgage alone had been taken, there can be no doubt but that it would have constituted a specialty debt. * * * If he had taken a single bill and a bond with a penalty, or a bond with and one without security, though there might have been an equity to restrain the enforcement of both, I do not see how the alteration of one could vitiate the other."

It is stated that the mortgage, in *Gillett* v. *Powell*, made no allusion to the bond, and it is insisted that in this case the mortgage does mention the note, and that makes the difference. It will be observed that the mortgage in the case before us does not, in the conveying part, make the least reference to any note, but directly to the debt itself, as follows : " That the said Richard Elliott, in consideration of the sum of seven hundred and three dollars and eighty cents, lawful money of the United States, to him in hand paid, the receipt whereof is hereby acknowledged, have granted, bargained, conveyed," &c., &c. This was a distinct and independent acknowledgment of the debt under seal, and a deed of land to secure this amount of money.

We do not take the view that this amount of money, including the fifteen per cent. interest for one year, had to be first fixed by the note—" provided for by the note "—and then transferred to the mortgage. Neither the note nor the mortgage, as they stood originally, mentioned the fifteen per cent. interest for a

year, and the consolidated amount, including the interest for one year, could be as well " provided for" in writing by the mortgage as by the note, and, as matter of fact, was so " provided for." The note was " not the only contract " in writing covering and making legal the fifteen per cent. It was embraced in the mortgage as well as in the note. The mortgage was a security at least as high and original in its character as the sealed note, and as capable of containing the original agreement, which it did. The mortgage would have been good and recoverable for the amount of money distinctly stated in it, if the note had never been given at all. *McCaughrin & Co.* v. *Williams*, 15 *S. C.* 505.

It is true that in the defeasance of the mortgage it is stated as follows : " Provided always and these presents are upon this condition : that if the said Richard Elliott shall well and truly pay his certain promissory note, having even date herewith, given to the said P. M. Plyler, then these presents shall become void," &c. The note altered was not in fact the promissory note of Elliott, but a sealed note of Elliott and C. A. Plyler, and it is therefore claimed that the note referred to is not the sealed note that was altered ; and the whole doctrine being merely technical, it is insisted that the greatest certainty should be required. We, however, suppose that reference was intended to be made to the sealed note, that day given by Elliott and C. A. Plyler, for the sum of $703.80, and think that the reference thus made was precisely equivalent to and only another form of saying " well and truly pay the amount hereinbefore stated," to wit, the sum of $703.80 (the precise amount of the note referred to).

Even disregarding the mistake in the description of the note, it does not seem to us that such an erroneous reference in the defeasance of the mortgage should be allowed to have the great effect claimed for it ; that is to say, in contradiction to the first and most important part of the mortgage, to change the whole structure and effect of the instrument, and, from being an original security for the debt expressly named in it, to make it merely a collateral security for the note itself, a security of no higher grade than the mortgage.

Besides, Elliott, who got and retains the money of plaintiff, and executed the mortgage to secure it, has never claimed that he should be exonerated from the debt. On the contrary, there is evidence tending to show that after he had notice of the alteration of the note, he declared to Walters, Conner and Duffie that, while he intended to prosecute the alleged forgery, he owed plaintiff the debt; that it was a just debt, and he expected to pay the principal and interest, but not pay any more. See *McCorkle* v. *Doby,* 1 *Strobh.* 396.

The judgment of this court is that the judgment of the Circuit Court be modified; that it be affirmed in so far as it dismissed the complaint against C. A. Plyler, as surety, and that in so far as it refused an order to foreclose the mortgage against Richard Elliott, it be reversed and the cause remanded to the Circuit Court for such orders as may be necessary to carry out the conclusion herein indicated.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCIVER *dissenting.* It appears to me that the question as to what effect the alteration of a note, secured by a mortgage, has upon the right to foreclose a mortgage, depends altogether upon whether such alteration was fraudulently made by the plaintiff. If it was, then the plaintiff not only loses his right of action on the note, but also his right to the aid of the court in enforcing the collection of his debt in any form. This is the penalty which he incurs for his fraud. The court withholds the use of its process to enforce the collection of a debt which may be due to a person who has, for the purpose of committing a fraud upon his debtor, made an alteration in any one of the evidences of such debt. If, however, the alteration is not shown to have been done fraudulently by the plaintiff, then the only effect is to deprive the plaintiff of the right of action upon the note or other evidence of debt which has been altered, but does not affect his right of action for the debt, if he can establish it by any other evidence. He cannot sue upon the altered note, because that is not the contract into which the defendant entered, but he still may sue for the debt and will be permitted

to establish such debt by any other evidence than that afforded by the altered note, which it may be in his power to produce. These views, it seems to me, are fully supported by the authorities. *Masters* v. *Miller*, 4 *T. R.* 320; *Mills* v. *Starr*, 2 *Bailey* 359; *McCorkle* v. *Doby*, 1 *Strobh.* 396.

As is said by Lord Kenyon, in *Masters* v. *Miller, supra,* "No man shall be permitted to take the chance of committing a fraud, without running any risk of losing by the event when it is detected," so in *Mills* v. *Starr, supra,* Johnson, J., in delivering the opinion of the court, after laying down the rule that the alteration of a note by the party claiming under it, for the purpose of fraud, renders it void, uses this language: "To prevent fraud was the obvious policy of the rule which avoids a written contract on account of a fraudulent alteration in a material part, and a forfeiture of the benefit to be derived from it is the means used to enforce it. It is apparent that if the party guilty of the fraud may found a claim upon the original consideration, the rule itself would be defeated, and that he cannot is demonstrable from various considerations. * * * The forfeiture of the benefit to be derived from the contract is a just retribution for the fraudulent intent." And in *McCorkle* v. *Doby, supra,* it is said: "A person is not at liberty to say, 'I have made two contracts, and if one of them is avoided for fraud I will set up the other.' *Selway* v. *Fogg,* 5 *Mees. & W.* 83; 9 *Car. & P.* 59; 1 *Adolph. & E.* 40."

It seems to me that any other rule would destroy the distinction between a fraudulent and an innocent alteration of a note. The latter destroys the right of action on the note, but does not impair the right of action on the original consideration for which such note was given (*Hunt* v. *Gray,* 35 *N. J.* 227; *S. C.,* 10 *Am. Rep.* 232), and if the former did no more it would be placing the guilty in no worse position than the innocent. Upon the same principle, it seems to me that where a note secured by a mortgage has been fraudulently altered by the plaintiff, he not only loses his right of action on the note, but also on the mortgage. To apply the principle announced in *McCorkle* v. *Doby,* quoted above, he is not at liberty to say: "I have made two contracts to secure my debt: one evidenced by

a note and the other by a mortgage, and, although the contract evidenced by the note has been avoided by my own fraud, yet I will set up the other."

It seems to be supposed that this case is concluded by the decision in *Gillett* v. *Powell, Spears Eq.* 155, but I do not so understand that case. ·There are· at least three distinctions between that case and the one now under consideration : First. There the mortgage was of personal property, and it is well settled that in such case the mortgagee becomes the legal owner of the mortgage property after condition broken, while here the mortgage is of real estate where that rule does not obtain. Second. In that case the mortgage did not in any way refer to the bond which had been altered, and, although I must confess that I have never been able to appreciate the force of this circumstance, as I suppose there can be no doubt that the bond and mortgage were given to secure the payment of the same debt, yet, as this seems to be one of the circumstances relied upon by the distinguished chancellor who delivered the Circuit decree, it may be proper to mention it. Third. But the material distinction is that in *Gillett* v. *Powell* there was no evidence tending to show that the alteration was made with any fraudulent intent, while here the jury have found, and their finding is approved and concurred in by the Circuit judge, that the alteration was fraudulently made by the plaintiff.

Again, in *Gillett* v. *Powell,* the case of *Mills* v. *Starr,* upon which I, in large measure, base my conclusion, is distinctly recognized, and the court disavows any disposition to call it in question. This case, therefore, in my judgment, stands upon an entirely different footing from *Gillett* v. *Powell,* for, as we have seen, the fact that the alteration was fraudulently made by the plaintiff, is the fact upon which the principle I am contending for rests ; and, as that fact did not appear in *Gillett* v. *Powell,* the decision in that case is in no way inconsistent with the view which I take of the case now under consideration.

So, too, the recent decision in *Nichols* v. *Briggs* rests upon a totally different foundation. In that case no element of fraud entered. It simply decided, and properly decided, that a plaintiff did not lose his right of action to foreclose a mortgage by

reason of the fact that his right of action on the note given for the same debt was barred by the statute of limitations. It is well settled that the statute affects the remedy only, and does not extinguish the debt. That still remains, and if a creditor is so fortunate as to have his debt secured by a mortgage as well as by note, I can conceive of no reason why he should be deprived of his right of action upon the mortgage simply because his right of action on the note is barred. If a creditor holds two securities for the same debt, he may sue upon the one or the other as he pleases. If he sues upon the one on which his right of action is barred by the statute, of course the action cannot be maintained; but if he sued upon the other before the expiration of the statutory period which applies to it, he meets with no such obstacle and therefore may recover. But this matter has been so fully and satisfactorily discussed by Mr. Justice Mc-Gowan in *Nichols* v. *Briggs*, that it is needless for me to pursue the subject.

I am, therefore, unable to concur in so much of the opinion of the majority of this court as holds that the action may proceed for the foreclosure of the mortgage notwithstanding the fraudulent alteration by the plaintiff of the note given for the same debt which the mortgage was given to secure, and, on the contrary, think that the judgment of the Circuit Court should be affirmed.

Judgment modified.